**NATIONAL DISTRIBUTION SERVICES, INC.,**
**Petitioner**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION and Pipeline and Hazardous Materials Safety Administration, Respondents.**

**No. 14-1254**
**September Term, 2015**

United States Court of Appeals,
District of Columbia Circuit.

Filed June 8, 2016

Kim Dennehey Mann, Scopelitis, Garvin, Light & Hanson, Washington, DC, Timothy Wayne Wiseman, Esquire, Scopelitis, Garvin, Light, Hanson & Feary, PC, Indianapolis, IN, for Petitioner.

Matthew M. Collette, Caroline Dao Lopez, Attorneys, U.S. Department of Justice (DOJ), Civil Division, Appellate Staff, Benjamin Charles Mizer, Solicitor, U.S. Department of Justice (DOJ), Office of the Assistant Attorney General, Washington, DC, for Respondents.

Before: MILLETT, Circuit Judge, and GINSBURG and SENTELLE, Senior Circuit Judges.

## JUDGMENT

Per Curiam

This case was considered on the record from the Pipeline and Hazardous Materials Safety Administration and the briefs and arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the petition for review be denied for the reasons stated in the memorandum filed simultaneously with this judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

· Attachment

## MEMORANDUM

National Distribution Services, Inc. ("National") petitions for review of an order of the Pipeline and Hazardous Materials Safety Administration (the "PHMSA") upholding an emergency out-of-service order issued by the Federal Motor Carrier Safety Administration (the "FMCSA") against National's entire fleet of cargo tanks used for the transportation of hazardous materials. National raises two issues in its petition. First, National claims that the PHMSA lacked substantial evidence for its finding that National's cargo tanks posed imminent hazards. Second, National asserts that the PHMSA erred

when it affirmed an emergency order that was not narrowly tailored to abate those imminent hazards. Although the administrative record in this case is far from a model of clarity, we hold that it contains substantial evidence to support the PHMSA's decision. We therefore deny National's petition with respect to both issues.

The impetus for this matter was an explosion on May 6, 2014, at one of National's equipment facilities. Two workers were welding the shell of a cargo tank owned by National. One worker died, and the other worker sustained severe burns. A subsequent investigation by the city fire inspector concluded that National's cargo tank had not been properly cleaned or purged of hazardous vapors before work began.

This explosion led the FMCSA to conduct its own investigation into National's compliance with the Department of Transportation's hazardous material regulations. The FMCSA investigator found a systemic disregard for those regulations. In particular, forty-two of the fifty-three cargo tanks that the investigator reviewed had not been lawfully tested or inspected. Yet National continued to operate these tanks on a daily basis. Additionally, at least eleven cargo tanks had unauthorized welding repairs, some of which were performed by unregistered National employees. The investigation also suggested that National directed and controlled the unauthorized repairs.

On August 14, 2014, the FMCSA issued an emergency out-of-service order, pursuant to 49 U.S.C. § 5121(d)(1), that prevented National from using any of its cargo tanks to transport hazardous materials. The order specified that National could return its cargo tanks into service by showing that all repairs complied with the hazardous material regulations and that the tanks had been properly tested and inspected.

The FMCSA issued a partial rescission of its order on August 22, 2014, releasing five cargo tanks based on National's self-certification that it had not performed any unauthorized repairs on those tanks. But by August 26, 2014, the FMCSA's investigator discovered that National had violated the out-of-service order by transporting hazardous materials in unreleased tanks. National later acknowledged its violation of the order. When National declined to provide a complete, certified list of its cargo tanks to the FMCSA, the agency stopped accepting National's self-certifications, instead requiring that its own inspectors check National's tanks for unauthorized repairs. National did not make its tanks available to the FMCSA's inspectors.

Instead, National filed a petition for review of the out-of-service order with the PHMSA. On October 3, 2014, the Chief Safety Officer at the PHMSA upheld the emergency order. National now petitions for review of the PHMSA's decision.

We have jurisdiction "to affirm or set aside any part of the Secretary[ of Transportation]'s final action" pursuant to the Administrative Procedure Act (the "APA"). 49 U.S.C. § 5127(c). Under the APA, we will set aside agency decision-making that is arbitrary or capricious. *See* 5 U.S.C. § 706(2)(A). Where, as here, we review an informal adjudication, we technically do not apply the "substantial evidence" standard of § 706(2)(E), but "in their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (internal quotation marks omitted). In order to issue an emergency out-of-service order, "the Secretary [must] determine[ ] that a violation of [the hazardous material statutes or regulations], or an unsafe condition

or practice, constitutes or is causing an imminent hazard...." 49 U.S.C. § 5121(d)(1). The agency must also tailor the emergency order "to the extent necessary to abate the imminent hazard." *Id.*

National argues first that the PHMSA lacked substantial evidence to support its finding that National's cargo tanks were imminent hazards. We disagree. The record contains substantial evidence to demonstrate that: (a) at least eleven of National's in-use cargo tanks had unauthorized repairs, *see* J.A. 33, 101; (b) at least thirty-five, and as many as forty-two, cargo tanks lacked proper tests and/or inspections, *see* J.A. 26, 33, 98-100; and (c) National was involved in the unauthorized repairs, *see* J.A. 28-30, 93-94, 97, 104-06, 139, 141, 146-47, 156-57, 388, 393-94, 400. These facts show the existence of a hazardous condition involving National's cargo tanks. They also support the PHMSA's conclusion that there was an imminent risk of harm from that hazard—i.e., a "substantial likelihood [of] death, serious illness, severe personal injury, or a substantial endangerment to health, property, or the environment...." 49 U.S.C. § 5102(5). Not only did National exhibit a flagrant, and essentially fleet-wide, disregard for the hazardous material regulations, but the Department of Transportation's designation of materials as "hazardous" reflects the agency's determination that those materials pose an "unreasonable risk to health and safety or property." *Id.* § 5103(a). In addition, the out-of-service order identifies a July 14, 2014, incident in which National's "vehicle was placed out of service after the Inspector observed hazardous materials leaking from a control valve under the middle tank of three tanks." J.A. 10. In light of the totality of the evidence before the agency, we therefore hold that the PHMSA had substantial evidence for its imminent hazard finding.

Second, National argues that the out-of-service order was not narrowly tailored to abate any imminent hazard. Again, we disagree. The imminent hazard that the PHMSA identified stemmed from National's use of cargo tanks with unauthorized repairs and inadequate inspection records for the transportation of hazardous materials. *See* J.A. 33-34. The agency's out-of-service order aims to eliminate any risk from such use and is consistent with regulations prohibiting cargo tank operations absent up-to-date testing and inspection records. *See* 49 C.F.R. § 180.407(a). Furthermore, the FMCSA has already demonstrated that it is willing partially to rescind the order once National provides testing records for its vehicles and makes them available for inspection. *See* J.A. 18-20. The terms of the out-of-service order require National to "demonstrate to FMCSA that [it] ha[s] taken the actions listed [in the order] and that the actions have, in fact, resulted in abatement of the imminent hazard." J.A. 11. National has failed to meet its burden under this order. *See* J.A. 103-04, 388-89, 391, 518-20. We see no reason, and National has provided none, to interpret the narrow tailoring requirement for emergency orders, *see* 49 U.S.C. § 5121(d), as mandating the use of the "least restrictive means." Accordingly, we deny National's petition for review on this issue.

We are able to "discern the path" followed by the PHMSA and the FMCSA in reaching their conclusions and issuing the orders in this case. *Cf. Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970). We would, however, caution the two Administrations that the APA contemplates decisions that explain the connection between the evidence received, the facts found, and the conclusion reached. Specifically, the review in this

case would have been expedited by an express explanation of the basis for the determination of the imminent hazard. Also, the opinions rely on a presumption denominated the *Lite Cylinder* presumption, named for a previous review in which the Administrations also relied on it. *See Lite Cylinder Co.*, No. PHMSA-2013-0123, at 4-5 (July 1, 2013). Nowhere either in the present decision or the *Lite Cylinder* decision itself is the origin of the presumption well explained.

Nonetheless, despite the sparse explanation, the record is more than ample to support the action taken.

For the reasons stated herein, we deny National's petition for review.

*So ordered.*